J1FKNELC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4               v.                          18 CR 454 (KPF)

5   KAWAIN NELSON, DARRELL HUDSON,
    JONATHAN PADILLA, SILVIO
6   CIPRIAN, LAMAR GRIFFIN, JACKIE
    COOPER, SHARON HATCHER, EFRAIN
7   REYES,

8               Defendants.

9   ------------------------------x

10                                      New York, N.Y.
                                        January 15, 2019
11                                      10:15 a.m.

12  Before:

13              HON. KATHERINE POLK FAILLA,

14                                      District Judge

15                      APPEARANCES

16

17  GEOFFREY S. BERMAN,
         United States Attorney for the
18       Southern District of New York
    SARAH KRISSOFF
19  FRANK J. BALSAMELLO
         Assistant United States Attorneys
20
    FLORIAN MIEDEL
21       Attorney for Defendant Nelson

22  JAMES MATTHEW BRANDEN
         Attorney for Defendant Hudson
23
    THOMAS F. DUNN
24       Attorney for Defendant Padilla

25

J1FKNELC

1                          APPEARANCES (Continued)

2    LAWRENCE A. DUBIN
          Attorney for Defendant Ciprian
3    BY:  THOMAS F. DUNN

4    CHANEL MARIE SOCHACKI
          Attorney for Defendant Griffin
5
     MICHAEL H. SPORN
6         Attorney for Defendant Cooper

7    STEPHEN TURANO
          Attorney for Defendant Hatcher
8
     MARLON GEOFFREY KIRTON
9         Attorney for Defendant Reyes

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

J1FKNELC

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your names

3    for the record, beginning with the government.

4          MR. BALSAMELLO:  Good morning, your Honor.  Frank

5    Balsamello and Sarah Krissoff, for the United States.

6          THE COURT:  Good morning.

7          MR. MIEDEL:  Good morning, your Honor.  Florian

8    Miedel, for Kawain Nelson, the first in the second row.

9          THE COURT:  Thank you very much.

10          MR. BRANDEN:  Good morning, Judge.  Jim Branden, for

11    Darrell.  He's second from the left.

12          THE COURT:  Yes, thank you.  And good morning to both

13    of you.

14          MR. DUNN:  Good morning, your Honor.  Thomas Dunn, for

15    Jonathan Padilla.  He's in the third seat, closest to you.

16          And I'm standing in for Larry Dubin, for Silvio

17    Ciprian.

18          THE COURT:  Yes.  And thank you for doing that.  I

19    appreciate it.  Good morning to all of you.

20          Yes?

21          MS. SOCHAKI:  Good morning, your Honor.  Chanel

22    Sochacki, here with Mr. Lamar Griffin, in the second row.

23          THE COURT:  Yes.  Mr. Griffin is the fourth?  Sir,

24    hello.

25          MR. SPORN:  Good morning, your Honor.  Michael Sporn,

J1FKNELC

1  for Jackie Cooper.  He's in the second row, on the opposite

2  end.

3          THE COURT:  Yes.  Good morning to both of you.

4          MR. TURANO:  Good morning, your Honor.  Stephen

5  Turano, on behalf of Sharon Hatcher, present in the first row.

6          THE COURT:  Good morning.  Thank you.

7          MR. KIRTON:  Marlon Kirton, for Efrain Reyes.  He's in

8  the first row, first seat.  Good morning, your Honor.

9          THE COURT:  Good morning, and thank you.

10          All right.  Let me just begin with a housekeeping

11  measure:  I am aware that we're working with some strange

12  times, and we have some issues, but just to advise the

13  government on the issue of where this conference is, we've

14  twice scheduled it in courtroom 506.  We -- I have access to

15  three courtrooms in this building, and I'm at the mercy of

16  whatever I'm told is available.  For reasons that I don't quite

17  know, your office has continued to advise the marshals that

18  folks are to be brought to courtroom 110.  So part of the

19  problem this morning was that the marshals do not understand

20  why I wasn't in courtroom 110, even though we had actually put

21  a notice on the docket that it was going to be in courtroom

22  506.

23          MR. BALSAMELLO:  Yes, your Honor.  And this morning, I

24  believe 8:00 or 8:30, I responded to our prisoner production

25  saying we were here were in 506, so I'm not sure if that maybe

J1FKNELC

1    didn't make it to the marshals in time, but we notified them

2    this morning.

3              THE COURT:  All right.  I received a call shortly

4    before 10:00 wondering whether 110 was the appropriate place to

5    produce.  It is fine now, and I'm not faulting anyone, because

6    these are, again, very confusing times, but I just wanted to

7    make sure so that we're all aware for wherever the next

8    conference is.

9              Mr. Balsamello, should I be speaking with you or with

10   Ms. Krissoff about discovery and next steps in the case?

11             MR. BALSAMELLO:  I'm happy to address them, and if

12   Ms. Krissoff knows something I don't, we can confer, and she

13   can address it.

14             THE COURT:  Okay.

15             MR. BALSAMELLO:  In terms of discovery since the last

16   conference, we've spoken extensively with defense counsel, with

17   Julie de Almeida, with the Court.  The issue with material

18   getting into the prison was resolved very quickly after that

19   last conference.  Things went in within the week or two that

20   followed, and those hard drives were all -- that issue was

21   completely resolved, I think on a timeline the Court was aware

22   of when it was happening.

23             THE COURT:  Yes.

24             MR. BALSAMELLO:  In terms of discovery, we've produced

25   a great deal of material.  Much goes, in our view, well beyond

J1FKNELC

Rule 16.  We produced a lot of buy reports and NYPD material
that in the interests of just transparency and giving the
defense what we have, we've done that.

         So, in our view, everything that is in our custody
that is to be produced at this point has been produced.  There
is a very, very small segment of material that's outlying,
which is buy videos where the undercover's face was visible on
the video.  The PD has been continuing to work through those to
redact them.  It's a very time-consuming process because it
could be extended stretches where the face is visible, and they
have to redact it frame by frame of that video.  So there are
approximately ten to fifteen of those videos still outstanding.

         With respect to defendants who are here today:  It's
about half of those relate to one of those two defendants,
Mr. Reyes and Mr. Padilla.  Before this conference --

         THE COURT:  One moment, please.  Half of the videos
that are still outstanding relate either to Mr. Reyes or to
Mr. Padilla?

         MR. BALSAMELLO:  One relates to Mr. Reyes, and I
believe about seven relate to Mr. Padilla.  Now, these may also
be some that were produced.  There may be some duplication
happening here.  We're trying to figure out -- the PD has
actually redacted videos we've produced already anyway.  In the
interests of making sure Mr. Padilla has the videos and
everyone has their videos, we've given Mr. Dunn a disk today

J1FKNELC

1    with any that are unredacted, and he can bring those and show

2    those to Mr. Padilla.  As soon as we have redacted versions,

3    those will go into the prison, but at least counsel has a copy

4    of them, and he can review them.

5        He already has multiple videos of his buys, some of

6    which may actually, like I said, overlap with the ones that PD

7    is redacting.  So they're out there, and counsel has them, and

8    that is the last very small subset of material at issue.

9        THE COURT:  Just so that I'm clear, there are

10   approximately ten to fifteen videos that are still in the

11   redacting process?

12       MR. BALSAMELLO:  Correct.  We're also going -- for the

13   entire case, for all counsel, we're going to produce all of the

14   ones that remain under the protective order, so that counsel

15   have them, and, again, they can bring them and show them to

16   their clients.  For the sake of making them available to the

17   people who were actually involved in the sale, that's why we

18   made special disks for Mr. Dunn and Mr. Kirton this morning.

19   But everyone else will have them.  If they want to look at

20   codefendants' buys, their attorneys will have them and be able

21   to show them.

22       THE COURT:  All right.  Again, just let me follow up,

23   please.  If one of them related to Mr. Reyes and approximately

24   seven related to Mr. Padilla, do the remaining three to eight

25   of them relate to others who are present today in court, or

J1FKNELC

1    others who are as yet uncharged, or something else?

2              MR. BALSAMELLO:  No.  We have several that relate to

3    Defendants Collins and Crooms.

4              THE COURT:  Thank you.

5              MR. BALSAMELLO:  And those will also be included --

6    when we produce to all counsel, those will be included, too.

7    So the attorneys will have all of those, again, under the

8    protective order, just so that for the undercover's safety, we

9    don't want his face floating around the prison, but the

10   defendants will be able to see all those videos.

11             THE COURT:  To the best of your recollection, sir, the

12   issues that we discussed at the last conference were resolved

13   within a few weeks of the last conference?

14             MR. BALSAMELLO:  Yes.  The hard drives were received

15   from Ms. de Almeida, we put all of the discovery to date on

16   those drives and produced them straight to the prisons.  I

17   think it took a couple of days in the prison system to get to

18   the library, but they have been there for months now.  And

19   every production we've made since, if there have been small

20   items that have come through -- for instance, newly redacted

21   buy videos -- at the time we produced them to counsel, we've

22   also put them into the prisons.

23             THE COURT:  I understand.

24             To the best of your recollection, there are no

25   outstanding subpoenas of which the government is aware?

J1FKNELC

1          MR. BALSAMELLO:  I don't believe so, no.

2          THE COURT:  All right.  I appreciate that

3     investigations are ongoing and anything can happen, but you're

4     not awaiting, for example, a trove of bank records yet to

5     produce?

6          MR. BALSAMELLO:  No.  Or any sort of search warrant

7     material or anything, no.  We don't have anything like that

8     outstanding.  As the investigation goes on, if there are

9     potentially additional defendants or if we learn that other

10    people were connected to this conspiracy that become -- sort of

11    put them under the umbrella of Rule 16, we'll obviously make

12    those productions right away.

13         THE COURT:  Thank you for letting me know.  Anything

14    else you'd like me to know, sir?

15         MR. BALSAMELLO:  No.  We sort of began the discussion

16    with counsel about dates going forward.  We're open to defense

17    counsel's proposed schedule, motions, and any other dates they

18    want to set down.  Plea offers, I think, we'll start extending

19    within the next week or two.

20         THE COURT:  Okay.  Thank you.

21         Mr. Miedel, you are the first person in my line of

22    vision.  Do you wish to talk to us, or is there someone on the

23    team who wishes to speak for all defense counsel?

24         MR. MIEDEL:  I think Mr. Sporn was elected.

25         THE COURT:  Oh, Mr. Sporn.  I appreciate your

J1FKNELC

1    election, sir.  Please let me know what you'd like to do.

2              MR. SPORN:  Well, that's one of --

3              THE COURT:  I'm going to ask you to grab a microphone,

4    if there's any one nearby you, because in this courtroom,

5    acoustics are not great.

6              MR. SPORN:  Sure.

7              THE COURT:  Thank you.

8              MR. SPORN:  In terms of discovery, I don't know that I

9    have anything else to add, certainly not on behalf of my

10   client, and I think we're all similarly situated.  I think

11   we're at the point where if your Honor wants to move the case

12   forward, we could -- which, of course, I know you do -- we

13   could have a motion schedule.  But I want to make a point of

14   letting your Honor know that I think we're all in what I regard

15   as active discussions with the government, and, hopefully,

16   those will be fruitful, although it's premature to say that for

17   sure.

18             I raise that because, as an alternative to setting a

19   motion schedule, I think I would propose a fairly shorter

20   status conference before we do that.  My only concern is with a

21   motion schedule, that might impose an artificial deadline on

22   the discussions that are just starting to heat up, and I think

23   those discussions will result in not having to make motions,

24   for the most part.

25             THE COURT:  Let me push back a little bit on that,

J1FKNELC

1    please.

2              MR. SPORN:  Sure.

3              THE COURT:  I want you and your respective clients to

4    have all of the time that you need to consider whatever plea

5    offers are made by the government.  The only concern I have

6    about another status conference is simply coordinating the

7    schedules of the many attorneys involved.  So while I'm happy

8    to do that in a period of 30 to 45 days, if you think that is

9    the time you need to evaluate these proposals, the alternative

10   is to set a motion schedule where the opening brief isn't due

11   for 60 days, and, at that point, my hope is -- you'll tell me

12   if I'm wrong -- that you'll know whether your discussions can

13   be fruitful in the sense of resolving the case short of trial

14   or not.

15             MR. SPORN:  Yes, I think that's sensible, Judge.  I

16   think that would work for us.

17             THE COURT:  Again, I'm happy to see everyone as often

18   as you'd like.  It's just there are a number of you, and I

19   don't know that you all have so much free time, that we can

20   schedule a conference, but if you want to talk amongst your

21   friends and let me know your view, that's fine.

22             MR. SPORN:  Yes, let me just do that for one moment.

23             THE COURT:  Please.

24             (Counsel confer)

25             MR. SPORN:  Your Honor, I think we would be fine with

J1FKNELC

1    the 60 days for a motion schedule, but with the caveat that at

2    least one of us, I think, would prefer to actually take a shot

3    at having another status conference before we do that.  But I

4    think there's a consensus that all of us could go with either

5    approach.

6            THE COURT:  All right.  Well, let me give you option

7    B, which is can you figure out a time in the next 30 to 45 days

8    when you're all available?  Because someone is going to have a

9    trial, everyone's always got a trial, so if you have -- again,

10   I would welcome a conference.  So if you can figure out a time,

11   and it works with my schedule, I'll be here.

12           MR. SPORN:  Okay.  You want to give us another minute?

13           THE COURT:  Of course.

14           MR. SPORN:  Thank you, Judge.

15           (Counsel confer)

16           MR. SPORN:  Judge, if your Honor would approve it,

17   we're all available February 27th to have that status

18   conference.  Hopefully, that will give us enough time for the

19   government to formulate what they wanted to do and convey that

20   to us.

21           THE COURT:  At the moment, I am on trial that week,

22   but let me hope against hope that the government shutdown will

23   be resolved by then, and let's set it, please, for 3:00 o'clock

24   on that day, and I will move the civil conference that I have.

25   So 3:00 o'clock on February 27th.

J1FKNELC

1            MR. SPORN:  I appreciate it.

2            THE COURT:  That is a time that works for everybody?

3            COUNSEL:  Yes, Judge.

4            THE COURT:  Okay.

5       Let me just ask:  I'm not making light of current

6  events, but so far, no one is having any problems meeting with

7  or speaking with their clients?

8            Yes, Mr. Miedel?

9            MR. MIEDEL:  Well, your Honor, for example, I was

10 there yesterday at the MDC, but I was turned away because there

11 was no visiting, but I don't know how more and more frequent

12 that kind of occurrence is going to happen, but it's obviously

13 happened several times already in the last two weeks, but we'll

14 see.

15           THE COURT:  Okay.  Yes, sir?

16           MR. SPORN:  I think this is a gathering storm, Judge.

17 Yesterday people were turned away, and I think that's been a

18 chronic problem over the last week or two.  It's a hit-and-miss

19 thing, you never know until you get there, unfortunately,

20 unless you happen to catch an email that people send out to

21 notify us, which sometimes happens, sometimes doesn't, but it's

22 a problem.

23           THE COURT:  We board of judges were just advised

24 yesterday by Mr. Patton from the Federal Defenders about some

25 issues.  Again, I'm not ascribing any blame at this point

1    because I understand the staffing issues, but it may be -- if

2    it complicates the discussions that you're having with your

3    clients, we may need to have some meetings with the Marshals

4    Service or with the Bureau of Prisons to figure out what can be

5    done as an accommodation.  So I wanted to know whether what

6    Mr. Patton was telling me was something specific to Federal

7    Defenders, which I doubted very much, or was more widespread.

8    Which --

9         MR. BRANDEN:  We've all had trouble, Judge.  Mostly in

10   the MDC so far, but we've all had problems.

11        MR. SPORN:  He's kept the panel in the loop with the

12   same information, I'm sure, that he's conveying to the Court.

13        THE COURT:  I understand.

14        So we will be setting this conference on the 27th.

15   And it is my understanding, obviously, if folks reach

16   resolution with the government and want to have a plea

17   proceeding prior to that date, let me know, and we'll put you

18   on the calendar as soon as we can.

19        For everyone else who appears on that date, it's my

20   expectation that there will be a motion schedule proposed that

21   will not be unduly long, so that we can move the case

22   appropriately, not too fast, not too slow, but just

23   appropriately.  So I will see you on that day.

24        Let me ask, though, of the defense counsel here:  Are

25   there any issues specific to any of your clients that you want

J1FKNELC

1    to bring to my attention in this proceeding?

2             MR. BRANDEN:  No, Judge.

3             MR. MIEDEL:  No.

4             MR. DUNN:  Yes, your Honor.

5             THE COURT:  Yes, sir.  Thank you, Mr. Dunn.

6             MR. DUNN:  My client has a separation on him in MCC,

7    and he's separated, for example, from his brother, and he can't

8    go, as a result, to any kind of programs, religious services.

9    I brought this to the attention of the prosecution, and they

10   advised me they're going to look into it.  I just wanted to put

11   that on the record.

12            THE COURT:  It is on the record.  Did you bring it to

13   their attention today or sometime earlier?

14            MR. DUNN:  I mentioned something a while back, but I

15   brought it again today.

16            THE COURT:  Thank you.

17            Mr. Balsamello, do you have any incite into the issue?

18            MR. BALSAMELLO:  I don't recall it being brought up

19   earlier, but I'm not doubting Mr. Dunn, he may well have with

20   me or a colleague, but we will check it today.  I don't know

21   him to be separated from his brother, but there are certain

22   separations related to the case that we would keep in place,

23   and if there are ones we can lift, we'll do that.

24            THE COURT:  Okay.  Mr. Dunn, just so that we're all

25   clear, the concerns that your client has expressed to you are

J1FKNELC

```
 1    that there are programs and religious services that he is not
 2    able to participate in; is that correct, sir?
 3              MR. DUNN:  That's correct, your Honor.
 4              THE COURT:  Okay.  Thank you.
 5              Mr. Balsamello, you'll excuse me if I sound like I
 6    don't know what I'm talking about.  Is there a possibility of
 7    Mr. Dunn's client being moved to a different facility?
 8              MR. BALSAMELLO:  I can inquire.  That is usually not
 9    the step BOP takes.
10              THE COURT:  That is fine.
11              MR. BALSAMELLO:  But if there are separations that
12    can't be lifted, and they are creating burdens, we can inquire
13    with BOP if they would.  Given the circumstances now, I would
14    not be optimistic about that, but I can certainly ask.
15              THE COURT:  I thank you.
16              I'm going to understand, sir, that in the next couple
17    of days, you're going to speak about this with Mr. Dunn, and
18    that you will let me know if there's something that I can get
19    involved in.  I'm not going to call you up tomorrow and make
20    sure you made the calls, I just know that you will do it, but
21    you will please let me know if there's something that I can do.
22              MR. BALSAMELLO:  I will, yes.
23              THE COURT:  Thank you so much.
24              Mr. Dunn, anything else with respect to your client or
25    the client for whom you are standing?
```

J1FKNELC

1          MR. DUNN:  No, your Honor.

2          THE COURT:  Anyone else have anything specific to

3    raise to your clients?

4          MR. SPORN:  No, your Honor.

5          MR. KIRTON:  No, your Honor.

6          THE COURT:  Okay.  Thank you very much.

7          Mr. Balsamello, is there an application from the

8    government?

9          MR. BALSAMELLO:  Yes.  We would ask that time be

10   excluded between today and, I believe it was, February 27th, to

11   allow the parties to have the plea discussions we've been

12   referring to and for the defense to continue reviewing

13   discovery and consider any motions potentially for a schedule

14   to be set at that conference.

15          THE COURT:  Thank you.

16          Is there any objection or position from the defense?

17          MR. MIEDEL:  No objection.

18          MR. BRANDEN:  No objection.

19          MR. DUNN:  No objection.

20          COUNSEL:  No objection.

21          THE COURT:  Thank you very much.  You'll let me

22   address your clients directly.

23          Lady and gentlemen, we've met at prior proceedings,

24   and there have been applications for the exclusion of time

25   under the Speedy Trial Act.  I am pleased in a way that I

J1FKNELC

1    wasn't in our last conference to hear that discovery issues

2    have been resolved and these materials have been produced.  I

3    think this is perhaps one of the most critical stages of your

4    case, where you and your attorney, upon reviewing the

5    discovery, decide what it is you want to do, and the

6    government, upon reviewing the same discovery, decides if there

7    is an offer that can be made.

8            I want to make sure that you and your attorneys have

9    the time that you need to consider any offer the government

10   makes and to discuss with the government the terms of such

11   offer, and I also want to make sure they speak with you, so

12   that you're fully informed as you make a decision about whether

13   to file motions or whether to resolve this case short of trial.

14   For all of these reasons, I am finding that the ends of justice

15   served by excluding the period of time from today's date

16   through the 27th of February outweigh the interests that each

17   of you has and that the public, in general, has in you getting

18   to trial more quickly.  I will see you on the 27th of February,

19   if not sooner.

20           Thank you very much.

21           We are adjourned.

                                    * * *

23

24

25