

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 25, 2020

**BY ECF**

Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

      Re:    *United States v. Kawain Nelson, a/k/a "Kobe," a/k/a "Kobi," a/k/a "Slope,"*
              18 Cr. 454 (KPF)

Dear Judge Failla:

      The Government writes in brief response to defendant Kawain Nelson's supplemental sentencing letter of August 24, 2020, in which he makes certain arguments in favor of a mandatory minimum 60-month sentence, which would be a 27-month downward variance from the low-end of his applicable 87- to- 108-month Guidelines range ("Def.'s Supp. Mem."). For the reasons set forth below, the Court should reject all of these new arguments.

      The defendant first cites the risk of COVID-19 and conditions of his confinement at the Metropolitan Detention Center ("MDC"). *See* Def.'s Supp. Mem. at 1-3. He concedes that he did not get sick from COVID-19, and he does not claim that he ever personally had any medical concerns that the MDC failed to address. *See id.* at 2. Instead, he relies on the general stress of the COVID-19 pandemic, which has affected every single person across the country and world, and the lockdown conditions in jail, which have affected every single inmate in every jail and prison in the United States. Reducing the defendant's sentence to account for these universal realities would create totally unwarranted sentencing disparities between him and every similarly situated defendant who was sentenced prior to the COVID-19 outbreak, almost none of whom are eligible for relief from their sentences because COVID-19 is not, standing alone, an "extraordinary and compelling reason for a sentence reduction." *See e.g.*, Dkt. #267 (denying compassionate release to co-defendant Jonathan Padilla, who actually contracted COVID-19; quoting 18 U.S.C. § 3582(c)(1)(A)(i)). The resulting disparity would be most apparent when comparing this defendant's sentence to those of his less culpable co-defendants.[1]

---

[1] In a footnote, the defendant suggests that MDC's infection rate—15 inmates positive out of 665 tested—proves that jail conditions placed him at inordinate risk of contracting the virus. *See* Def.'s Supp. Mem. at 2 n.1. In reality, such a small number of cases stands in stark contrast with the countless bail applications and compassionate release motions filed in the last five months that have alleged the MDC's response to the pandemic was so grossly inadequate that living there was tantamount to a "death sentence." Meanwhile, the positivity rate in the 10460 zip code

August 25, 2020
Page 2

      This defendant also should not receive a windfall simply because he moved to adjourn his original sentencing date from February 18, 2020, so his counsel could take more time to collect letters in support of his original submission. *See* Dkt. #173. Awarding him such a reduction now would create a powerful incentive for every defendant in every case to delay sentencing as long as possible, so any expected and unexpected hardships of incarceration can factor into a mitigation argument. The defendant has not experienced any conditions that are materially worse than those faced by his co-defendants and by thousands of other inmates across the country. He just happened to ask for an extension of his sentencing date, whereas almost all of his co-defendants went forward before the pandemic.

      In addition, the defendant argues that the Government "overstates [his] culpability" and knows that he "provided drugs to no more than two members of the (hardly large) conspiracy – [James] Crooms and occasionally [Anthony] Corley." Def.'s Supp. Mem. at 3. This is simply untrue. First, it defies any semblance of logic to think that the defendant had supplied crack cocaine to other people for more than a decade, but he dealt with only the same two people whose phones the Government happened to wiretap in the course of this investigation in 2017 and 2018. Such an assertion is incredible on its face. Second, the defendant knew that Crooms and Corley supplied crack to other street-level sellers, so by extension, the defendant sourced the drugs for those other dealers as well. Third, multiple cooperating witnesses have told the Government, in substance and in part, that the defendant supplied crack to people other than Crooms and Corley. Specifically, witnesses have identified other recipients of the defendant's product as including (among other people) Allen Walker, Albert Collins, and Lamar Griffin, the last of whom is related to the defendant by adoption. *See* PSR ¶¶ 75-76.

      Finally, for the first time in his supplemental letter, the defendant objects to a statement in the PSR that he supplied a quantity of heroin. *See id.* at 4 n.3. Two cooperating witnesses have also credibly represented that the defendant supplied heroin to Crooms, including while Crooms was residing in an apartment that he shared with Collins.[2]

      As to these last two points, the Government agrees with defense counsel that they do not affect the Guidelines calculation, and the Government submits that a Guidelines sentence is entirely appropriate, even if the defendant's assertions were correct. The Government defers to the Court, however, as to whether these issues are material to the sentence to be imposed.

---

of the Bronx (where West Farms and the Lambert Houses are located) is 15% of individuals tested. *See* https://www1.nyc.gov/site/doh/covid/covid-19-data.page (last visited Aug. 24, 2020). The dashboard page cited in the defendant's letter also shows that throughout March and April 2020, the daily positivity rate in the Bronx was consistently above 30% and exceeded 50% and 60% on several days. *See* https://forward.ny.gov/percentage-positive-results-county-dashboard (last visited Aug. 24, 2020). Only starting in May did the daily rate fall below 10%.

[2] The Government agrees that when the defendant gave a gun to Collins, he did so free of charge. *See id.*

August 25, 2020
Page 3

      For the foregoing reasons and those set forth in the Government's original sentencing submission, the Government respectfully submits that a sentence within the Guidelines range of 87 to 108 months' imprisonment is sufficient but not greater than necessary to accomplish the purposes of sentencing in this case.

                                              Respectfully submitted,

                                              AUDREY STRAUSS
                                              Acting United States Attorney for the
                                              Southern District of New York

                                  By: _____
                                      Frank J. Balsamello / Sarah Krissoff
                                      Assistant United States Attorneys
                                      (212) 637-2325 / -2232

cc:      Florian Miedel, Esq., *counsel for defendant Kawain Nelson* (by ECF)